### Chicago, Milwaukee & St. Paul Railway Company v. George Milmine et al.

1. Fraud—*Issuing False Bills of Lading.*—A person surreptitiously procured bills of lading from a common carrier for a quantity of grain and made a pretended consignment, forwarding the bills to the consignee, at the same time drawing upon him for the amount, which was paid. Upon discovering the fraud the consignee sued the carrier for the amount paid. It appeared that the person making the pretended consignment afterward shipped an amount of grain equal to the amount called by bills of lading, to the consignee, against which no drafts were drawn. *It was held* that the question as to whether the plaintiff accepted the grain in substitution of what was represented to have been consigned by the bills of lading, was a question of fact, proper to be decided by the jury.

**Memorandum.**—Action for deceit. Appeal from the Superior Court of Cook County; the Hon. James Goggin, Judge, presiding. Heard in this court at the October term, 1894. Reversed and remanded. Opinion filed January 10, 1895.

Appellant's Brief, Edwin Walker and H. H. Field,
Attorneys.

A receipt or bill of lading issued by an agent of a carrier, either by fraud or mistake, without the receipt of the prop-

erty described therein, is void and imposes no liability upon the carrier even in the hands of a *bona fide* holder for value. Friedlander v. Ry. Co., 130 U. S. 416; The Freeman v. Buckingham, 18 How. (U. S.) 182; The Lady Franklin, 8 Wall. (U. S.) 325; Pollard v. Vinton, 105 U. S. 7; Robinson v. Ry. Co., 9 Fed. Rep. 129; 16 Fed. Rep. 57; Nat. Bank of Commerce v. R. R. Co., 44 Minn. 224; Sears v. Wingate, 3 Allen (Mass.) 103; B. & O. R. R. Co. v. Wilkins, 44 Md. 11; 22 Am. Rep. 26; Hunt v. R. R. Co., 29 La. Ann. 446; Fellows v. Steamer Powell, 16 La. Ann. 316; 79 Am. Dec. 581; Dean v. King, 22 Ohio St. 118; La. Nat. Bank v. La Veille, 52 Mo. 380; Williams v. R. R. Co., 93 N. C. 42; Porter on Bills of Lading, Sec. 432; Hutchinson on Carriers, 2d Ed., Secs. 122–124.

The same rule prevails in the English courts. Grant v. Norway, 10 C. B. 665; Cox v. Bruce, 18 Q. B. Div. 147; Hubbersty v. Ward, 8 Exch. 330; Jessel v. Bath, L. R., 2 Exch. 267.

It is not within the general scope of the master's authority to sign bills of lading for any goods not actually received on board.

To the same effect see Dean v. King, 22 Ohio St. 118; Williams v. R. R. Co., 93 N. C. 42.

The authorities, English and American, are collected and considered in the following text books and leading articles: Porter on Bills of Lading, Secs. 428 to 435; Hutchinson on Carriers, 2d Ed., Secs. 123, 124; Article, " Bills of Lading," by Judge Freeman, 38 Am. Dec., 410–412; 14 Central Law Journal, 22.

APPELLEES' BRIEF, L. H. BISBEE AND W. N. GEMMILL,
ATTORNEYS.

As a general rule, bills of lading issued without the receipt of the property are void, but in this case the company is liable on the ground that its agent trusted to the statement made to him by the shipper, and was grossly negligent in not ascertaining when he issued the bill of lading, whether or not the car was loaded.

As to the plaintiff, the bill of lading was fictitious when issued, and the loss would properly be made to fall upon the company, as the agent seems to have been the one through whose fault the shipper was enabled to perpetrate the fraud. Stone v. Railroad Company, 9 Brad. 48; National Bank of Commerce v. Railroad Company, 44 Minn. 233; B. & O. R. R. Co. v. Wilkins, 44 Md. 11; Jasper Trust Company v. Kansas City, M. & B. R. R. Co., 14 So. Rep. 546.

MR. JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

The appellees were grain dealers in Chicago, and during the months of May and June, 1891, paid certain drafts drawn upon them by one Clark, a grain buyer and shipper doing business at Janesville, Wisconsin.

The method of doing business between Clark and appellees was that Clark would buy grain at Janesville and ship it in car loads over the railroad of the appellant corporation to the appellees, to be sold on commission, and when the grain was shipped would draw drafts upon the appellees for sums about equal to the value of the grain, which drafts, either with or without bills of lading attached, Clark was accustomed to procure to be discounted at banks in Janesville to whom, or for whose account, the drafts would be paid by appellees, irrespective of whether the grain against which they were supposedly drawn had already arrived in Chicago or not. When the bills of lading did not accompany drafts they were sent by Clark to the appellees, by mail, and Clark would at the same time inform appellees of the amount of the draft drawn, but no drafts were paid by appellees until after the bills of lading had come to their hands.

In some way, not clearly appearing, Clark, at different dates in the months mentioned, procured from appellant's agent at Janesville, bills of lading for five car loads of oats which were never, in fact, received by appellant, and drew drafts upon the appellees in the usual way for amounts representing about the value of that number of car loads of

oats, and such drafts were paid by appellees in the usual way. It does not appear that the bills of lading issued by appellant's agent for any of those particular five car loads were attached to the drafts drawn by Clark, but the bills of lading were sent by Clark to the appellees, and the drafts drawn against them were paid by appellees in the usual manner; and it was not known by the appellees that none of the oats represented by the bills of lading for the five car loads had been received by the appellant, until after appellees had paid the drafts drawn against the bills of lading issued therefor.

There is no substantial disagreement concerning the facts as stated, and it was admitted by the appellees, on the trial, that the bills of lading for the five carloads in question were issued without any grain represented by them having in fact been delivered to the appellant.

It was, however, contended by the appellant that those lacking five car loads were made good by a subsequent substitution of five other car loads by Clark, for which appellees made no further advances or payments, and evidence was adduced which tended to show such substitution.

Five other car loads of oats were subsequently shipped by Clark to the appellees over the appellant's road, without any shipping receipts or bills of lading being given for them and without any draft being drawn against them, and they were received by the appellees and sold, and credited to Clark.

But as to whether they were shipped and received in substitution, or to take the place of, the five car loads erroneously receipted for, is a question of fact, asserted by Clark and denied by appellees, that should have been left to the jury. If such a substitution was in fact made and accepted there could have been no recovery against the appellant for a loss which had thus been made good.

Clark might have still owed appellees, but the appellant would not have been liable, for, at most, anything more than the difference in value of the oats between the time when received and when they ought to have been received.

The appellees ceased doing business with Clark shortly afterward, and for the balance of account owing by Clark to appellees this suit was brought against appellant, it being claimed by the appellees that appellant was liable on said bills of lading to the extent that Clark owed appellees for moneys paid on the faith of them; and under the direction of the court a verdict for the amount of such balance, which was less than the value of the oats represented by the false bills of lading, and less than the amount of the drafts drawn against them, with interest added, was returned.

We have not intended to state any more of the case than is necessary to disclose the error that was committed by the court in taking the case from the jury, nor do we intend to have it implied that there was no other question of fact in the case appropriate for determination by the jury.

At the conclusion of the evidence, the defendant (appellant here) moved the court to instruct the jury to return a verdict for the defendant, which motion was overruled, and thereupon the defendant asked the court to give to the jury the following instruction:

" The jury are instructed that if you believe from the evidence, that after the receipts of bills of lading sued upon were delivered to the plaintiffs and drafts paid by them, the said Clark delivered to the defendant company shipments of grain to take the place of the shipments purporting to have been made and covered by such receipts and the said plaintiffs received the same and passed the proceeds thereof to his credit, and no drafts were drawn by said Clark against such substituted shipments, then your verdict must be for the defendant."

This last instruction involves the question of fact, which, we have already said, should have been submitted to the jury.  But the court refused to give it, and on its own motion instructed the jury to return a verdict in favor of the plaintiffs (appellees) for $1,654.33, which was the balance of account due from Clark to appellees, with interest added.

The requested instruction to find for the defendant, raises the question of law, ably argued by both sides, as to the

liability of a common carrier to the *bona fide* holder for value of a bill of lading issued by its agent, either by fraud or mistake, without the receipt of the property described therein.

This question, although presented on the record, need not be decided now, because of the error already indicated being sufficient to demand a reversal of the cause, and a discussion of it had better be postponed, in view of the fact that before it reaches us again the Supreme Court may have blazed a trail for us to follow through the wilderness of the conflicting decisions that exist upon the subject.

For the error indicated, the judgment of the Superior Court will be reversed and the cause remanded.